FREDERICK L. FROST *vs.* CHARLES F. JOSSELYN & another.

Middlesex.    November 14, 1901. — January 28, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Nuisance.    Fireworks.*

A person who drives with a horse and buggy to an exhibition of fireworks in a
public street for the purpose of witnessing the display cannot recover for an
injury caused by his horse taking fright at rockets fired there by the defendant
without a license.

TORT for injuries caused by the alleged negligence of the
defendants in setting off two rockets which frightened the plain-
tiff's horse and caused him to overturn the buggy in which the
plaintiff was driving.    Writ dated March 29, 1897.

At the trial in the Superior Court, before *Sherman,* J., the
jury returned a verdict for the plaintiff in the sum of $700 with
certain special findings.    The plaintiff discontinued his action
against the defendant A. Clarence Josselyn, and the judge at
the request of the other defendant, Charles F. Josselyn, reported
the case for the consideration of this court.    If any error had
been made the verdict was to be set aside; otherwise, judgment
was to be entered on the verdict.

*H. N. Shepard, C. H. Stebbins & O. Storer,* for the defendant
Charles F. Josselyn.

*M. Coggan,* for the plaintiff.

LATHROP, J.    The declaration in this case alleges that the
plaintiff was lawfully driving his team, in the exercise of due
care, in the town of Townsend, on the public highway which
passes the grocery occupied by the defendants, when his horse
was greatly terrified and frightened by the negligent and care-
less discharge of fireworks by the defendants, and that by reason
of said negligence and carelessness of the defendants, the plain-
tiff's horse was so terrified and frightened that it ran away and
the plaintiff was thrown out and injured.

The case comes before us upon a report of the judge of the
Superior Court who tried the case, from which it appears that
there were exceptions to the admission of evidence, to the refusal

of the judge to give certain requests for instructions and to the instructions given, and to the refusal of the judge to set aside the verdict, which was based not only on his discretion, but as matter of law. The jury answered certain specific questions, and returned a general verdict for the plaintiff. The report concludes in these words: " The whole cause now is reported to the Supreme Judicial Court so that if any error has been made the verdict may be set aside ; otherwise, judgment to be entered on the verdict."

. The following facts appear from the report. On the night of the accident, there was a dedication of a new band stand in Townsend, and notice thereof had been published in the Fitchburg Sentinel, the newspaper circulating in that vicinity, and handbills had been distributed. The newspaper mentioned that there would be fireworks, but the handbills did not say anything about fireworks. The plaintiff with a young woman came from Brookline to see the celebration, driving over in a covered buggy with one horse. The plaintiff on reaching the common drove along one side of it, and then turned into Main Street, which faced the common.

The plaintiff testified that he arrived in Townsend about quarter past nine, and drove around a short time, stopping at various places opposite the common ; that he then drove towards the defendants' store, and stopped about forty-five feet from it ; that he stopped there about ten minutes, when the first thing he heard or saw was a little ball, and the next thing something went off from near the store and over the common ; that his horse made a plunge, and he had nearly got it under control when the second rocket went off, and then the horse shot off sideways and overturned the buggy. He also testified that he had not seen any red lights, fireworks or rockets anywhere, nor heard that any would be set off that evening. There was, however, evidence from the plaintiff's own witnesses that there had been red lights and rockets going off before the accident all round the common.

The evidence to show that either of the defendants set off any rockets was very slight. There was evidence that some were set off opposite the store, and that rockets were handed from the store to a man who set them off ; and one of the wit-

nesses testified that he thought that this man was Charles Josselyn, one of the defendants.

The evidence admitted against the defendants' exception was to the effect that the defendants did not have a license to keep or sell fireworks, and that there was a by-law of the town, prohibiting the setting fire " to any materials known as fireworks," and throwing " any such lighted fireworks in, into or across any of the streets, public ways or sidewalks of the town." There was also evidence of improper management of the horse by the plaintiff; but as this question is immaterial under the finding of the jury, it is unnecessary to state it.

. Among other requests for rulings, the defendants asked the court to instruct the jury as follows:

1. " Upon the testimony, under the pleadings, the plaintiff cannot maintain this action.

2. " If the plaintiff knew, or had reason to know, that fireworks were being discharged or were likely to be discharged upon or near the premises toward which he was driving, then the plaintiff was not in the exercise of due care and cannot maintain this action.

3. " If the plaintiff knew or had reason to know, that his horse was frightened by the discharge of fireworks, then he was not in the exercise of due care in continuing where fireworks were being discharged, and cannot maintain this action.

4. " Upon the testimony the plaintiff was not in the exercise of due care and cannot maintain this action.

5. " There is no testimony that the defendants were not in the exercise of reasonable care and the plaintiff cannot maintain this action.

6. " If the plaintiff knew, or had reason to know, that there would be a discharge of fireworks and went there as a spectator, then he cannot maintain this action."

The judge refused to give the rulings requested, and left it to the jury to determine whether the plaintiff was entitled to recover, and instructed the jury that it was a question for them to determine whether the plaintiff was in the exercise of due care.

The judge submitted three questions to the jury, and instructed them as follows: " Now the question is, Are you satisfied by a

preponderance of evidence that the defendants or either of them set off or were they present and aiding in setting off the two rockets that frightened the horse? When you have passed upon that question and answered that question and the other two questions, I do not see but what you have passed upon all the real issues between the parties."

The three questions and answers were as follows:

1. "Did the plaintiff prior to the accident know that fireworks, including rockets, were to be, or were being, set off?" The jury answered, "Yes."

2. "Was the plaintiff in the exercise of due care in the management of his horse at the time of, and just before, the accident?" The jury answered, "Yes."

3. "Did the defendants, or either of them, set off or were they present aiding in setting off the two rockets, and if so, which of the defendants?" The jury answered, "Charles Josselyn."

After verdict, the defendants filed a motion that it be set aside on the ground that, as matter of law, it was contrary to the answer to the first question. This motion was overruled in the exercise of the judge's discretion and as matter of law. The plaintiff subsequently discontinued the case as against A. Clarence Josselyn.

While the declaration proceeds upon the ground of negligence on the part of the defendants, no evidence was put in of negligence in the manner of discharging the rockets, and, in the mind of the judge below, the whole case as to negligence on the part of the defendants apparently rested on the question whether in setting off the rockets, the defendants, or either of them, had committed an unlawful act; and the case has been argued before us upon the same theory by the counsel for the plaintiff upon his brief. So, too, as to care on the part of the plaintiff. It was not disputed that the plaintiff went there for the purpose of seeing the celebration, and the jury have found, contrary to his testimony, that he knew that fireworks, including rockets, were to be, or were being, set off.

We are unable to see how this case can be distinguished from *Scanlon* v. *Wedger*, 156 Mass. 462. In that case, as in this, the plaintiffs were voluntary spectators at an exhibition of fireworks

in a public street.   In that case there was an invalid license. In this case there was no license.   After a statement of the facts in *Scanlon* v. *Wedger*, it was said by Mr. Justice Allen: "Under this state of things it must be considered that the plaintiffs were content to abide the chance of personal injury not caused by negligence, and that it is immaterial whether there was or was not a valid license for the display.   If an ordinary traveller upon the highway had been injured, different reasons would be applicable. . . . But a voluntary spectator, who is present merely for the purpose of witnessing the display, must be held to consent to it, and he suffers no legal wrong if accidentally injured without negligence on the part of any one, although the show was unauthorized.   He takes the risk."

In the opinion of a majority of the court the evidence in regard to the defendants' having no license was immaterial, and the second request for instructions should have been given. The sixth request is embraced in the second.   Without considering the other questions raised, we are of opinion that the order must be

*Verdict set aside.*