## ROCCO, EXECUTRIX, *v.* LEHIGH VALLEY RAILROAD CO.

No. 359.  Argued January 18, 1933.—Decided February 6, 1933.

*Mr. Abraham W. Feinberg* for petitioner.

*Mr. Harold E. Simpson,* with whom *Mr. Howard Cobb* was on the brief, for respondent.

Mr. Justice Roberts delivered the opinion of the Court.

The petitioner's husband, while riding a track inspection tricycle, was killed in a head-on collision with an electrically operated passenger train on a single track branch of the respondent's railroad connecting Ithaca and Auburn, New York. The line, which skirted the eastern shore of Cayuga Lake, was subject to washouts in stormy weather. Primarily to protect four daily passenger trains, the decedent, Rocco, an experienced employee, was assigned to inspect a section extending from Ithaca to a point about 7½ miles north of that city. His schedule required him to leave Ithaca at 6:30 A. M., preceding the morning northbound train, and to return in advance of the southbound train, which arrived at Ithaca at noon; to go out again at 3:30 P. M., about an hour and a half before the afternoon train left Ithaca, and to return ahead of the train from Auburn, which was due at Ithaca at 8:30 P. M.

On December 8, 1927, there was a high west wind blowing across Lake Cayuga, which had driven the waters over the track at various points and been the cause of washouts and delays. The southbound train due at Ithaca at 12:23 P. M. was over three hours late. At 3:30 in the afternoon Rocco left to cover his inspection beat, and was struck by the train about a mile from Ithaca, on a blind

curve, where he could not see the approaching train nor the motorman see him.

A rule with which Rocco was familiar forbade track-walkers to occupy the main track without first ascertaining from the operator the whereabouts of approaching trains in both directions. Rocco's practice had been to comply with this rule. On one or more occasions when he failed to do so he had been reprimanded for the omission. He must have known on the day of the accident that heavy washouts had occurred and that the train which should have arrived at 12.23 was somewhere on the line. It reached Ludlowville, eight miles north of Ithaca, the last reporting station prior to reaching Ithaca, at 3.14 P. M. This fact Rocco could have ascertained if, in compliance with the rule, he had inquired of the operator.

Suit was brought in the Supreme Court of New York, under the Federal Employers' Liability Act, by Rocco's executrix, who averred that his death resulted from negligent failure to operate the train at proper speed, omission to warn him of its approach by whistle or bell, and breach of the duty to provide him with a safe place to work. The defenses were that decedent assumed the risk and that his negligence barred a recovery. Upon the trial a verdict of $12,096 was rendered, which the jury reduced forty per cent. on account of Rocco's contributory negligence. 135 Misc. 639; 239 N. Y. S. 157. The Appellate Division affirmed judgment for the petitioner (231 App. Div. 323; 248 N. Y. S. 15). The Court of Appeals ordered that the complaint be dismissed (259 N. Y. 51; 181 N. E. 11). The case is here on certiorari from the judgment of dismissal entered by the trial court pursuant to mandate.

The questions presented are whether under the circumstances the respondent owed the decedent any duty to warn him of the approach of the train, or to keep a lookout for him; and whether Rocco's disobedience of the rule

was in such sense the primary cause of his death as to render immaterial any neglect on the part of the motorman. The Court of Appeals decided both questions against the petitioner.

Respondent relies on the duty of a person employed on the tracks of a railroad to exercise vigilance for his own safety, and to keep out of the way of moving trains, and asserts that the chance of a collision was a risk assumed by an employee assigned to work on the roadbed. *Aerkfetz* v. *Humphreys,* 145 U. S. 418; *Chesapeake & Ohio Ry. Co.* v. *Nixon,* 271 U. S. 218. Those cases applied the principle to accidents on a stretch of track where the workman's view was unobscured. Here, according to the proof, the curve on which the collision occurred, and obstructions at the side of the roadway, prevented any but a very short view of the track ahead. We think these facts required that the jury should determine whether the motorman exercised reasonable care to have his train under control, to sound a warning before entering the curve, and to be on the lookout for workmen whose presence might be expected on the day in question, when the waters of the lake were washing over the tracks at this point and inspection and repair might be required. Under the authorities cited the decedent assumed the risks ordinarily incident to his employment as a track inspector, but in the circumstances shown we do not think they included a failure on the part of the motorman to keep a lookout and to give warning in places where the view of one who might be expected to be on the track or approaching in the opposite direction was shut off and the probability of accident was therefore much greater than where the track is straight and the view unobstructed. The issues of negligence of the motorman and contributory negligence of the decedent were for the jury.

The Court of Appeals held, as a matter of law, that Rocco's negligence was the primary cause of the accident, and therefore the petitioner could not maintain the action.

This ruling was made in reliance upon the authorities of which *Davis* v. *Kennedy*, 266 U. S. 147, *Unadilla Valley Ry. Co.* v. *Caldine*, 278 U. S. 139, and *Southern Ry. Co.* v. *Youngblood*, 286 U. S. 313, are typical. These were cases where a member of a train crew was killed as a result of disregarding orders to wait at a given point until a train moving in the opposite direction had passed. In each of them the decedent's negligence was the proximate and efficient cause of the accident; in each it was sought to show that the fatality was in part due to alleged negligence of some other employee in omitting to give the decedent an order which would have reminded him of the orders previously given and by which he was bound. In none was there any negligence on the part of employees operating the train moving in the opposite direction with which the collision took place.

These decisions are not controlling in the present case. There is no suggestion that the rule upon which the respondent relies forbade Rocco to start on his inspection trip if he ascertained that the approaching train was within seven or eight miles of Ithaca. It was his duty to make his afternoon trip. The rule required no more than that before leaving he should acquaint himself with the whereabouts of trains on the branch and guide himself accordingly. If he had made inquiry, whether he should await the arrival of the train, or attempt to meet it at some point a short distance from that city, was a matter for his decision. If the rule had forbidden him to leave under circumstances such as inquiry by him would have disclosed, this case would be parallel with those cited. His disregard of the rule was none the less an element in the case. Whether he was guilty of negligence was to be determined in the light of all facts he knew, or ought in the exercise of reasonable care to have known. How he would have conducted himself, and what precautions he would have taken had he ascertained the exact whereabouts of the train, is a matter of speculation. The jury

adjudged him guilty of contributory negligence and moulded its verdict accordingly. But it was open to the jury, as above shown, to find that the motorman of the train was also guilty of negligence which contributed to the collision. Rocco's infraction of the rule was a concurrent cause, but may not in any proper sense be held the primary cause of the accident. His negligence did not preclude a finding by the jury that his death was in part due to the negligence of the respondent's servants. The Act imposes liability upon the carrier for injury or death resulting " in whole or in part " from the negligence of any of its officers, agents or employees (U. S. C. Tit. 45, § 51).

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE MCREYNOLDS and MR. JUSTICE BUTLER are of opinion that the judgment should be affirmed.